E. MARTIN ESTRADA
United States Attorney
MACK E. JENKINS
Assistant United States Attorney
Chief, Criminal Division
DEREK R. FLORES (Cal. Bar No. 304499)
Assistant United States Attorney
General Crimes Section
    1200 United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012
    Telephone: (213) 894-4896
    Facsimile: (213) 894-0141
    Email:     derek.flores@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. 2:22-CR-565-DOC-1 |
|---|---|
| Plaintiff, | GOVERNMENT'S SENTENCING POSITION FOR DEFENDANT DANNY DOUGLAS HUDSON |
| v. | |
| DANNY DOUGLAS HUDSON, | Hearing Date: July 24, 2023<br>Hearing Time: 10:00 a.m.<br>Location: Courtroom of the<br>Hon. David O. Carter |
| Defendant. | |

Plaintiff United States of America, by and through its counsel of record, the United States Attorney for the Central District of California and Assistant United States Attorney Derek R. Flores, hereby files its sentencing position for defendant Danny Douglas Hudson.

This position is based upon the attached memorandum of points

//
//
//
//

and authorities, the files and records in this case, and such further evidence and argument as the Court may permit.

Dated: July 10, 2023

Respectfully submitted,

E. MARTIN ESTRADA
United States Attorney

MACK E. JENKINS
Assistant United States Attorney
Chief, Criminal Division

*/s/ Derek Flores*
DEREK R. FLORES
Assistant United States Attorney

Attorneys for Plaintiff
UNITED STATES OF AMERICA

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.   INTRODUCTION**

Defendant Danny Douglas Hudson ("defendant") and codefendant Sadie Hudson[1] are required to register as sex offenders under the Sex Offender Registration and Notification Act ("SORNA") because they were both convicted of a tier II sex offense in West Virginia state court in 2013. Between June and October 2021, defendant and codefendant Sadie Hudson traveled by bus from West Virginia to Pennsylvania, then Indiana, and then Nevada, before finally arriving in California in November 2021. They then lived in California through November 2022 while knowingly failing to register as sex offenders in the State of California as required by SORNA.

As such, defendant pled guilty to failing to register as a sex offender, in violation of 18 U.S.C. § 2250(a). (Dkts. 27 ("Joint Statement"), 28.) The United States Probation and Pretrial Services Office for the Central District of California ("Probation") filed a Presentence Investigation Report ("PSR") and Recommendation Letter. (Dkts. 32, 33.) Based on a total offense level of 12 and a criminal history category of V, Probation recommends the following: a mid-range Guidelines term of imprisonment of 30 months, a lifetime period of supervised release, no fine, and a $100 special assessment. (Dkt. 32 at 1-5.)

For the reasons set forth below, the government agrees with Probation's sentencing calculations but recommends the following

---

[1] Defendant is married to codefendant Sadie Hudson. Although codefendant Sadie Hudson is indicted as "Sadie Knotts-Hudson," (see Dkt. 1), she explained to Probation that she goes by "Hudson," not "Knotts-Hudson." The government therefore respectfully refers to her by the surname "Hudson."

sentence: a low-end Guidelines term of imprisonment of 27 months, a lifetime supervised release, no fine, and a $100 special assessment. Based on the totality of the circumstances, this sentence is sufficient but not greater than necessary to achieve the sentencing goals set forth in 18 U.S.C. § 3553(a).

## II. DEFENDANT'S CRIME

The facts relevant to sentencing are accurately set forth in the PSR and the Joint Statement. (PSR ¶¶ 7-19; Joint Statement ¶ 9.) In summary: in 2010, codefendant Sadie Hudson had sex with defendant's then 15-year-old nephew, defendant told codefendant Sadie Hudson to "get photographs," and codefendant Sadie Hudson photographed her and the victim's genitals. (PSR ¶ 54.) As such, in 2013, defendant pled guilty to and was convicted of Conspiracy to Commit the Offense of Use of Minors to Film Sexually Explicit Conduct (Felony), in violation of West Virginia Code Section 61-10-31, with the object of the conspiracy being to use a minor to film sexually explicit conduct, in violation of West Virginia Code Section 61-8C-2(c). (Id. ¶ 8.) Based on this conviction, defendant was required to register as a sex offender under SORNA. (Id. ¶ 9.)

Between June and October 2021, defendant and codefendant Sadie Hudson traveled by bus from West Virginia to Pennsylvania, then Indiana, and then Nevada, before finally arriving in California in November 2021. (PSR ¶¶ 12-15.) Defendant and codefendant continued to live in California through at least November 2022 and, during that time, knowingly failed to register as sex offenders in the State of California as required by SORNA. (Joint Statement ¶ 9.)

**III. DEFENDANT'S OFFENSE LEVEL IS 12**

Probation calculated a total offense level of 12. (PSR ¶ 37.) Probation started with a base offense level of 14 based on defendant being a tier II sex offender under U.S.S.G. § 2A3.5(a)(2). (Id. ¶¶ 25-29.) Probation then subtracted two-levels for acceptance of responsibility under U.S.S.G. § 3E1.1(a). (Id. ¶ 36.)

The government agrees with these calculations. To the extent that defendant attempts to argue that defendant is a tier I sex offender and that the base offense level should be 12 under U.S.S.G. § 2A3.5(a)(3), defendant would be wrong.

**A.   Defendant Is a Tier II Sex Offender under SORNA**

There are two alternative ways for a defendant's underlying conviction to make that person a tier II sex offender.

First (and not at issue here), the underlying conviction against a minor must be "comparable to or more severe" than any of four specific federal offenses: sex trafficking, coercion and enticement, transportation with intent to engage in criminal sexual activity, or abusive sexual contact. 34 U.S.C. § 20911(3)(A). The categorical approach likely applies to § 20911(3)(A). See United States v. Cabrera-Gutierrez, 756 F.3d 1125, 1133 (9th Cir. 2014) (analyzing whether defendant's state crime was analogous to the federal crime of "sexual abuse" for purposes of being a tier III sex offender under § 20911(4)(A)). Defendant's underlying conviction is not a categorical match to any of the offenses listed in § 20911(3)(A).

Second (and relevant here), the underlying conviction "involves" either "use of a minor in a sexual performance," "solicitation of a minor to practice prostitution," or "production or distribution of child pornography." 34 U.S.C. § 20911(3)(B). Although the government

3

has not found any cases specifically analyzing whether the categorical or circumstance-specific approach applies to § 20911(3)(B), the statute's text and caselaw support application of the circumstance-specific approach. That is because the statute uses the broad term "involves" and lists specific circumstances rather than specific offenses. See United States v. Rogers, 804 F.3d 1233, 1237 (7th Cir. 2015) ("The word 'involving' implies a noncategorical, fact-based inquiry."); United States v. Dodge, 597 F.3d 1347, 1355 (11th Cir. 2010) ("Moreover, § 16911(7) uses the general terms 'include,' 'involves,' 'involving,' and 'by its nature.' The list of specified offenses includes one that could not be any broader—'[a]ny conduct that by its nature is a sex offense against a minor.' 42 U.S.C. § 16911(7)(I) (emphasis added). All signs point to only one reasonable conclusion—that we may look beyond Dodge's conviction statute to the underlying facts of his offense to determine whether his offense qualifies as a 'sex offense against a minor.'").

### B. The Categorical Approach Does Not Apply

Defendant may argue that the categorical approach applies because several cases state that the categorical approach applies to the tier determination under SORNA. See, e.g., United States v. Berry, 814 F.3d 192, 198 (4th Cir. 2016) ("The language used to define a tier II sex offender also supports the conclusion that Congress intended courts to use a categorical approach when the sex offender tier definition references a generic offense, with the exception of the specific circumstance regarding the victim's age."); Cabrera-Gutierrez, 756 F.3d at 1133. But these cases are distinguishable because they involve the SORNA subsections that list specific offenses such as § 20911(3)(A) or § 20911(4)(A) and do not

4

analyze the sections that use the term "involves" and then list specific circumstances such as § 20911(3)(B). See, e.g., Berry, 814 F.3d at 197 n.2 ("The portions of the tier III definition found in 42 U.S.C. § 16911(4)(B) and (C) are irrelevant to this case. We therefore do not address them here.").

Applying the circumstance-specific approach here, defendant's underlying conviction involved both "use of a minor in a sexual performance" and "production of . . . child pornography" (only one is needed for defendant to be a tier II sex offender). 34 U.S.C. § 20911(3)(B). As detailed in the PSR:

> According to the Criminal Complaint, on February 9, 2010, the victim's mother notified the Preston County Sheriff's Department that her fifteen-year-old son had been sexually assaulted by Knotts-Hudson. Thereafter, the victim informed officers that he went to the residence of his uncle, Danny Hudson, to shovel snow. When the victim arrived, he sat with Hudson and viewed pornography. A short time later, Hudson's live-in girlfriend, Knotts-Hudson, a thirty-year-old woman, arrived at the residence. Hudson and Knotts-Hudson then left the room. As Knotts-Hudson returned to the living room area, the victim heard Hudson tell Knotts-Hudson to "get photographs." When Knotts-Hudson entered the living room, she pulled the pants off of the victim, removed her own pants, and engaged in sexual intercourse with the victim on the sofa. The victim reported that during the assault, Knotts-Hudson photographed their genitals with her camera phone.
>
> Immediately following the assault, the victim returned home and took a shower to clean himself off. When his father asked what happened, the victim reported the incident. The victim and his parents placed the clothing the victim had been wearing in a plastic bag and provided it to police.
>
> According to the Preston County Circuit Court PSR, Hudson was given the opportunity to make a written statement of his version of the offense. Hudson instead opted to give a verbal statement to this officer during the interview for this report, consisting of the following: "I don't know why I thought of it but the original idea was mine. I think it was more to get back at my brother… I … you know how it's like a rite of passage for a father and son. I didn't look at it as about the boy or anything sexual. It's a big thing for a father and son, helping him get that first sexual experience. I wanted to take that from him [the defendant's

5

>brother]. Alcohol played a big part in that decision. I don't think any of it would have happened [without alcohol]. As far as the pictures, they were taken for proof. They weren't for any sick uses. I was just going to use it for proof. You see, my brother and his son [the victim] had a running bet on who would get to bed her [the co-defendant] first. When we first got together my wife was kind of, well, promiscuous. My brother was always trying to get at me about it."

(PSR ¶ 54.)

Here, the "use of a minor in a sexual performance" was codefendant Sadie Hudson having sex with the minor victim. And the "production . . . of child pornography" was codefendant Sadie Hudson taking pictures of her and the victim's genitals during sex after defendant told her to "get photographs." The government therefore believes that defendant is a tier II sex offender under SORNA.

**IV.  DEFENDANT'S CRIMINAL HISTORY IS CATEGORY V**

Defendant has twelve criminal history points and is in Criminal History Category V. (See PSR ¶¶ 53-61.) Defendant has a 2010 West Virginia state court conviction for driving while on a DUI-suspended license (2 points), a 2012 West Virginia state court conviction for conspiracy to commit the offense of use of minors to film sexually explicit conduct, which forms the basis for requiring him to register under SORNA (3 points), a 2013 West Virginia state court conviction for driving without a license (1 point), a 2020 West Virginia state court conviction for failing to register as a sex offender (2 points), a 2021 West Virginia state court conviction for failing to register as a sex offender (1 point), and a 2021 West Virginia state court conviction for domestic battery, where the victim was codefendant Sadie Hudson (1 point). (Id. ¶¶ 53-58.) Defendant committed the instant offense while on probation in multiple cases (2

6

points). (Id. ¶ 60.) Defendant also has numerous convictions for which he receives no points due to their age. (Id. ¶¶ 41-52.)

## V. DEFENDANT'S GUIDELINES RANGE AND PROBATION'S RECOMMENDATION

An offense level of 12 and a Criminal History Category of V place defendant's Sentencing Guidelines range at:

- 27 to 33 months' imprisonment;
- Five years' to lifetime supervised release; and
- a fine of $5,500 to $55,000.

(See PSR ¶¶ 135, 137, 142; U.S.S.G. §§ 5A, 5E1.2.)

## VI. A 27-MONTH SENTENCE IS JUST AND APPROPRIATE HERE

The government respectfully recommends that the Court sentence defendant at the low end of the Guidelines range: 27 months' imprisonment, a lifetime period of supervised release, and a $100 special assessment. Such a sentence is sufficient but not greater than necessary to comply with the goals of sentencing. See 18 U.S.C. § 3553(a).

### A. Nature and Circumstances of the Offense, § 3553(a)(1)

Defendant knowingly failed to register as a sex offender for at least a year in California. (PSR ¶ 10; Joint Statement ¶ 9.) Sex offender registration and notification programs are important to public safety, and compliance with SORNA helps ensure that those programs function properly. Thus, a low-end sentence of a 27 months will serve to protect the public from defendant.

### B. History and Characteristics of Defendant, § 3553(a)(1)

Defendant's history and characteristics present both aggravating and mitigating factors that further justify the recommended low-end sentence. Among other things, defendant's criminal history includes multiple prior convictions for failing to register as a sex offender.

7

(PSR ¶¶ 56-57.) While defendant's criminal history is aggravating, several mitigating facts support imposition of a sentence no greater than the low-end of the Guidelines range. Between ages 5 and 11, defendant was apparently sexually abused by his father. (Id. ¶¶ 83-87.) Defendant has also been diagnosed with both bipolar disorder and schizophrenia for nearly two decades. (Id. ¶¶ 108-09.) The government respectfully submits that its low-end recommendation appropriately accounts for this history and these characteristics.

### C. Need for Deterrence and to Promote Respect for the Law, § 3553(a)(2)

The government's recommended low-end sentence would also promote respect for the law, protect the community, and deter defendant and others. A sentence of 27 months in custody would provide defendant sufficient time to contemplate his actions and their substantial consequences. And lifetime supervised release would hold him accountable for his future actions and deter him from committing more crimes.

### D. Need for the Sentence to Avoid Unwarranted Disparities, § 3553(a)(6)

Section 3553(a)(6) requires the Court to minimize sentencing disparities among similarly situated defendants. One way of doing so is to correctly calculate the Sentencing Guidelines range. See United States v. Treadwell, 593 F.3d 990, 1011 (9th Cir. 2010) ("Because the Guidelines range was correctly calculated, the district court was entitled to rely on the Guidelines range in determining that there was no 'unwarranted disparity' . . . ."); Gall v. United States, 552 U.S. 38, 54 (2007) ("[A]voidance of unwarranted disparities was clearly considered by the Sentencing Commission when setting the

Guidelines ranges."). Here, under the Sentencing Guidelines range, other defendants "with similar records who have been found guilty of similar conduct" as defendant can expect a sentence between 27 and 33 months. See U.S.S.G. § 5A. As such, the government's recommended low-end sentence, within that range, avoids an unwarranted disparity with similarly situated defendants.

**VII. FINE, FEDERAL BENEFITS, AND SUPERVISED RELEASE CONDITIONS**

Considering that defendant has no assets, (PSR ¶ 129), the government agrees with Probation's recommendation that no fine be imposed. (Dkt. 32 at 10.) The government also strongly supports supervised release condition nos. 4 through 9 considering defendant's extensive history of substance abuse and mental health conditions, including a past suicide attempt, and condition nos. 11 and 15-20 considering defendant's sex offender and failure to register convictions. (Id. at 2-4)

**VIII. CONCLUSION**

For the foregoing reasons, the government respectfully recommends that defendant be sentenced to: 27 months' imprisonment, a lifetime period of supervised release, and a $100 special assessment. Such a sentence is sufficient, but not greater than necessary, to serve the sentencing goals. See 18 U.S.C. § 3553(a).